# WHEELING

## STATE *v.* KENNEY.

Submitted March 5, 1907.    Decided June 14, 1907.

1. COMMERCE—*Interstate Shipment of Liquor—Applicability of State Law.*
    Section 1, chapter 40, acts of 1903, relating to shipment and sale of intoxicating liquors contrary to law and providing a remedy therefor, is inapplicable when applied to interstate shipments. (p. 286.)

2. INTOXICATING LIQUORS—*Sales—What Constitutes.*
    An agent in this state of an express company engaged in the

business of a common carrier of packages, which accepts spirituous liquor in another state for shipment and delivery to a consignee in this state collect on delivery; and which agent delivers the liquor to such consignee in the usual course of the business of such common carrier, and collects from the consignee the price of the liquor· and the cost of carriage, is not guilty of selling intoxicating liquor without a state license for dealing therein, although at the time of such delivery he knows the consignee had not ordered the liquor. (*p.* 287.)

Error to Circuit Court, Lincoln County.

J. J. Kenney was convicted of selling intoxicating liquor· without a license and brings error.

*Reversed.*

D. C. GALLAHER and MOLLOHAN, McCLINTIC & MATHEWS,. for plaintiff in error.

CLARKE W. MAY, the Attorney General, for the State.

MILLER, JUDGE:

The indictment charges that J. J. Kenney, the defendant, on the 4th day of December, 1905, in the said county, did,. without a state license therefor, sell, offer and expose for sale spirituous liquors, wine, porter, ale, beer and drinks of like nature, against the peace and dignity of the state.

The case was tried before the court (a jury being waived) upon the following agreed statement of facts: "That on the —— day of ————, 1905, a person, firm or corporation shipped from Covington, in the state of Kentucky, a package of whiskey containing one gallon, by Adams Express Company, consigned to one B. Childers, at West Hamlin, in Lincoln county and in the state of West Virginia, without the said Childers having ordered the whiskey, and without his knowledge, until he received the letter hereinafter men-· tioned; that the whiskey was shipped C. O. D. to West Hamlin, West Virginia, and the bill of lading therefor was mailed to Childers by the shipper; that upon the arrival of the whiskey at West Hamlin J. J. Kenney, the defendant and the agent of said express company, notified the said Childers. that the whiskey was there consigned to him, and that he could have it upon the payment to the said agent of the C. O. D.. charges thereon, towit, $3.80; that said Childers told said.

agent that he had not ordered the whiskey, but paid the said amount, $3.80, to the agent, who delivered to him the whiskey on the —— day of ————, 1905; that the said Kenney knew at the time that he delivered the package to said Childers that Childers had not ordered the whiskey; that Childers at the time of paying the said amount said he wondered how the shipper had obtained his name; that the shipper had prior thereto, by letter, notified the said Childers of shipping the whiskey; that said J. J. Kenney had no state license to sell spirituous liquors in Lincoln county; that said whiskey was shipped and delivered to said Childers within twelve months next prior to the finding of the indictment against the defendant. It is also agreed that the said B. Childers had no state license to sell spirituous liquors in the county of Lincoln at the time the said package of whiskey was delivered to him."

Upon consideration of the facts the court found the defendant guilty, and adjudged him to pay a fine of one hundred dollars and to be imprisoned in the county jail for six months. From that judgment Kenney prosecutes this writ of error.

The state relies on section 1, chapter 40, acts of 1903, which provides that "any agent or employee of any person, firm or corporation, carrying on the business of a common carrier, or any other person, who, without a state license for dealing in intoxicating liquors, shall engage in the traffic or sale of such liquors, or be interested for profit in the sale thereof or act as the agent or employee, consignor or consignee of the same, or who shall solicit or receive any order for the sale of any intoxicating liquors, or deliver to any person, firm or corporation any package containing such intoxicating liquors, shipped 'Collect on Delivery' or otherwise, except to a person having a state license to sell the same, or to the *bona fide* consignee thereof who has in good faith ordered the same for his personal use, shall be deemed to have made a sale thereof contrary to law, and guilty of a misdemeanor; and, upon conviction thereof, shall be fined not less than ten nor more than one hundred dollars, and may at the discretion of the court be imprisoned in the county jail not exceeding six months."

The facts agreed do not include the fact of common knowl-

edge, of which we take judicial notice, that the Adams Express Company is a common carrier of goods for hire, engaged in interstate commerce. The fact is agreed that the defendant was at the time of the transaction agent for the express company.

The facts therefore present an interstate transaction, over which federal law alone, and not the statutes of the states without leave of congress, can operate. The question presented has been recently before the courts of this and other states, the most recent case in this Court being that of *State v. Smith*, decided at the last term, in which, although the constitutionality of our statute as applied to interstate commerce was not directly decided, the majority opinion intimates that transactions like the one in question are not legitimate interstate commerce such as is entitled to the protection of the federal aegis. My own personal views on this proposition are contained in the dissenting opinion in that case of JUDGE POFFENBARGER, with whom I then concurred. But the question is now put to rest by the recent decision of the Supreme Court of the United States in the case of *Adams Express Company* v. *The Commonwealth of Kentucky*, decided May 13, 1907, not yet officially reported. The statute of Kentucky involved was as follows: "All the shipments of spirituous, vinous or malt liquors, to be paid for on delivery, commonly called C. O. D. shipments, into any county, city, town, district or precinct where this act is in force shall be unlawful and shall be deemed sales of such liquors at the place where the money is paid or the goods delivered; the carrier and his agents selling or delivering such goods shall be liable jointly with the vendor thereof."

We can perceive no distinction in effect between the facts of that case and those presented in this. That in the former the principal, and in the latter the agent, was indicted, can make no difference. The agent in the Kentucky case was indicted along with the principal, but before trial the indictment was dismissed as to him.

So far as appears, the express company in this case was engaged simply in the business of a common carrier; and the acceptance of the goods in Kentucky for shipment and their delivery to the consignee in West Virginia were made and done in the usual course of the company's business.

Until the goods were delivered by the defendant into the hands of the consignee, the transaction remained under the protection of federal law and was' not subject to state regulation.

Bowing to the supreme judicial authority, we must hold our statute inoperative as applied to interstate commerce, reverse the judgment of the circuit court, and discharge the defendant from further prosecution.

*Reversed.*